Alexa J. Askari (CA SBN 367075)
*aaskari@immdef.org*
Alvaro M. Huerta (CA SBN 274787)
*ahuerta@immdef.org*
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring Street, 10th Floor
Los Angeles, CA 90014
Telephone: (213) 340-8295
Facsimile: (213) 282-3133

*Pro Bono Attorney for Petitioner*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Mario Alberto Delgadillo,<br>Petitioner,<br><br>v.<br><br>Warden, Adelanto ICE Processing Center; Thomas Giles, Acting/Director of the Los Angeles Field Office, U.S. Immigration and Customs Enforcement; David Venturella, Acting/Director of U.S. Immigration and Customs Enforcement; Markwayne Mullin, Secretary of the U.S. Department of Homeland Security; and Todd Blanche, Attorney General of the United States,<br>Respondents. | Case No.<br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner, Mario Alberto Delgadillo, by and through undersigned counsel, hereby files this petition for a writ of habeas corpus challenging his unlawful arrest and detention by Immigration and Customs Enforcement ("ICE").

2. On September 4, 2026, Petitioner was pulled over and arrested while driving home from work by masked individuals. The individuals who arrested Petitioner never told him that they had a warrant for his arrest, nor did they show one to him. Instead, they showed him

a photo of another man they claimed to be looking for, who shared no resemblance to Petitioner other than appearing Latino. The individuals did not identify themselves as immigration enforcement.

3. Petitioner has never encountered immigration authorities before, and has no criminal history anywhere in the world. Prior to his arrest, he was the sole provider for his partner and three U.S. citizen children, who are struggling emotionally, financially, and physically in his absence.

4. Petitioner asks this Court to find that his warrantless arrest and continued detention violate the Immigration and Nationality Act ("INA") and its implementing regulations, as well as Petitioner's due process rights, and order his immediate release from custody.

## JURISDICTION

5. This action arises under the Constitution of the United States and the INA, 8 U.S.C. § 1101 *et seq*.

6. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

7. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

8. Venue is proper because Petitioner is detained at the Adelanto ICE Processing Facility in Adelanto, CA, which is within the jurisdiction of this District.

9. Venue is proper in this District because Respondents are officers, employees, or agencies of the United States and a substantial part of the events or omissions giving rise

to Petitioner's claims occurred in this District and Petitioner resides in this District and no real property is involved in this action. 28 U.S.C. § 1391(e).

## REQUIREMENTS OF 28 U.S.C. § 2243

10. The Court must grant the petition for writ of habeas corpus or issue an order to show cause ("OSC") to Respondents "forthwith," unless Petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require Respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

11. The habeas statute requires this Court to adjudicate this case quickly. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## PARTIES

12. Petitioner, Mr. Mario Alberto Delgadillo, is currently detained at Adelanto ICE Processing Center. Petitioner is in the custody, and under the direct control, of Respondents and their agents.

13. Respondent Warden is the Warden of Adelanto ICE Processing Center, and has immediate physical custody of Petitioner pursuant to the facility's contract with ICE to detain noncitizens, and is a legal custodian of Petitioner.

14. Respondent Thomas Giles is sued in his official capacity as the Acting Director of the Los Angeles Field Office of ICE. Respondent Giles is a legal custodian of Petitioner and has authority to release him.

15. Respondent David Venturella is sued in his official capacity as Acting Director of ICE, a component agency of DHS. ICE is responsible for enforcing U.S. immigration laws, including detention of alleged noncitizens in removal proceedings, which the agency chooses to accomplish through imprisonment and removal of noncitizens with final orders of removal. As ICE's Acting Director, Respondent Venturella is a custodian of Petitioner, with legal authority to produce and release him.

16. Respondent Markwayne Mullin is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security (DHS). In this capacity, Respondent Markwayne Mullin is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees ICE, the component agency responsible for Petitioner's detention and continued custody. Respondent Mullin is a legal custodian of Petitioner.

17. Respondent Todd Blanche is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice ("DOJ"). In that capacity, he has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA.

## STATEMENT OF FACTS

### I. Mario Alberto Delgadillo's Liberty Interest and Arrest

18. Mario Alberto Delgadillo (hereinafter "Mr. Delgadillo" or "Petitioner") has lived in the United States for twenty years. He has worked in construction for seventeen years, providing for his long-term partner and three U.S. citizen children, ages 17, 16, and 10.

19. On or about September 4, 2026, Mr. Delgadillo was arrested and taken into ICE custody without a warrant. Mr. Delgadillo was driving home from work at a construction site in

Victorville, California, when he saw police sirens in his rearview mirror. He immediately parked his work truck, and the patrol car parked behind him. Immediately, two other vehicles appeared and boxed his car in so that Mr. Delgadillo was trapped. Three individuals, two of whom wore masks, stepped out of the parked patrol car. They wore green clothes and vests with the letters "POLICE" written on them. Because of the vests that they wore, Mr. Delgadillo believed he was speaking to police officers, not ICE agents, until after he was arrested and taken into immigration custody. At no point did the ICE agents identify themselves.

20. When the men approached his car, Mr. Delgadillo rolled down his window and asked why he was stopped. One of the officers told him that they were looking for a "criminal" and showed him a photograph of a Latino man with brown skin and a trimmed beard. The person in the photograph did not resemble Mr. Delgadillo, and after looking at the photograph, Mr. Delgadillo remarked that the person in the photograph was not him. At that point, one of the officers asked for Mr. Delgadillo's "papers." Mr. Delgadillo responded by stating that he did not have any papers. In response, without any additional questioning, the ICE agent told Mr. Delgadillo that he would be taken into custody.

21. At this point, Mr. Delgadillo became frightened because he still did not know who these men were, and he began to roll up his car window. One of the agents then reached into his car, opened the door, and forced Mr. Delgadillo out onto the street. Mr. Delgadillo did not try to resist. Nevertheless, the agent became aggressive with Mr. Delgadillo and placed the handcuffs tightly around Mr. Delgadillo's wrists. Mr. Delgadillo was subsequently transported to Adelanto ICE Processing Center (hereinafter "Adelanto").

22. Mr. Delgadillo has been held in ICE custody since his arrest. He has never been shown a warrant or given an opportunity to challenge his continued detention. He

continues to be deprived of his rights and his liberty. He is separated from his family who must bear a heavy emotional, psychological, and financial burden in his absence.

23. This is the first time that Mr. Delgadillo has ever been separated from his partner and children. He has no criminal history, and this is the first time he has ever been incarcerated such that he is told when he can eat (and what food to eat), when to sleep, and when he can go outside. The conditions at Adelanto, furthermore, are overcrowded and unsanitary. Mr. Delgadillo has experienced a significant decline in his mental health as a result of being detained.

24. Mr. Delgadillo's family is also suffering greatly in his absence. His partner has type 1 diabetes. She takes medication daily to control her blood sugar. Doctors have also informed her that she has an ovarian cyst that urgently needs to be removed. This cyst has required her to visit the emergency room multiple times since Mr. Delgadillo has been detained. She does not have anyone other than her husband who can provide childcare while she recovers from this surgery.

25. Mr. Delagdillo's youngest daughter has developed symptoms of severe depression because of his detention. She refuses to go to school and does not want to eat. Moreover, Mr. Delgadillo's detention has placed a severe financial strain on the Delgadillo family because Mr. Delgadillo's partner is a homemaker whose job is caring for their children. Mr. Delgadillo, prior to his arrest, was the sole provider for the family.

## II. ***Vasquez Perdomo*** **confirms Respondents' conduct is unlawful**

26. 20. The ongoing litigation in *Vasquez Perdomo v. Mullin* challenges the same conduct by the Respondents throughout the Central District of California. The case arose from federal immigration enforcement's sweeping suspicionless stops and warrantless arrests throughout Southern California starting in summer 2025. A court in this District recently issued a preliminary injunction in *Vasquez Perdomo*, confirming that a "prearrest

individualized determination by the arresting agent or officer of probable cause that the person being arrested is likely to escape before a warrant can be obtained" is a requirement to effectuate a warrantless immigration arrest. *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP, 2026 WL 2751388, at *31 (C.D. Cal. Sept. 2, 2026). The court explained that 8 U.S.C. § 1357(a)(2) and its implementing regulation "clearly require two determinations: (1) unlawful presence and (2) likelihood of escape." *Id.* at *20.

27. The preliminary injunction confirms that "escape risk analyses are a prerequisite to warrantless arrest." *Id.* at *22. A later-issued warrant cannot replace the "prearrest individualized determination" that V*asquez Perdomo* identifies as required by the relevant statutes and regulations. *Id.* at *31.

28. The preliminary injunction is binding throughout the Central District of California: "Defendants are enjoined from enforcing their policy and practice of making warrantless civil immigration arrests in this District without a *prearrest* individualized determination by the arresting agent or officer of probable cause that the person being arrested is likely to escape before a warrant can be obtained, as required by 8 U.S.C. 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)." *Id.* (emphasis added).

## LEGAL FRAMEWORK

### III. The warrant requirement of 8 U.S.C. § 1226(a) is a precondition to arrest

29. In drafting the statute governing discretionary detention of noncitizens in removal proceedings, Congress imposed a clear, non-discretionary prerequisite to any arrest or detention under § 1226(a). Specifically, the statute states that "*[o]n a warrant* issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added).

30. The structure of § 1226(a) confirms that the existence of a warrant is a precondition to arrest and detention. Otherwise, the prepositional phrase "on a warrant" would be superfluous. Recognizing this, courts in this Circuit have repeatedly enforced the warrant requirement by ordering noncitizens' immediate release from custody where the government failed to obtain a pre-arrest warrant. *E.g., Mendoza v. Semaia*, No. 5:26-cv-05616-PD, 2026 WL 3270504, at *2 (C.D. Cal. Oct. 30, 2026) (collecting cases); *Cristin v. Armant*, et al., No. 5:26-cv-04024-DTB, 2026 WL 2584394, at *2-4 (C.D. Cal. July 29, 2026); *Landa Zaragoza, et al. v. Chestnut, et al.*, 1:26-cv-05294-EJD, 2026 WL 2049841 (E.D. Cal. July 15, 2026); *Urias v. Semaia*, 5:26-cv-02753-DTB, 2026 WL 1710375, at *6 (C.D. Cal. June 10, 2026).

31. Accordingly, where Respondents did not obtain an arrest warrant beforehand and the narrow exception to the warrant requirement does not apply (*see infra* section II), Respondents have no authority to arrest or detain an individual under § 1226(a), warranting their immediate release from custody. *See Cristin*, No. 5:26-cv-04024-DTB, slip op. at 5-8; *Landa Zaragoza*, 2026 WL 2049841; *Urias*, 2026 WL 1710375.

## IV. The exception to the warrant requirement under 8 U.S.C. § 1357 is narrow and still requires constitutionally adequate probable cause

32. The relevant exception to the warrant requirement only allows an "officer or employee of the Service authorized under the regulations" to make an arrest without a warrant if two preconditions are satisfied. 8 U.S.C. § 1357(a). First, the arresting officer must have "reason to believe" the individual is in the United States in violation of any such law or regulation and, second, reason to believe there is a "likelihood of the person escaping before a warrant can be obtained for [their] arrest." 8 U.S.C. § 1357(a)(2); *see also Vasquez Perdomo*, 2026 WL 2751388, at *31. The phrase "reason to believe" has been construed as "the equivalent of probable cause[,]" as noncitizens present in the United States are

"sheltered by the Fourth Amendment in common with citizens[.]" *Au Yi Lau v. U.S. Immigr. & Naturalization Serv.*, 445 F.2d 217, 222-23 (D.C. Cir. 1971); *see also Tejeda-Mata v. Immigr. & Naturalization Serv*., 626 F.2d 721, 725 (9th Cir. 1980) ("The phrase 'has reason to believe' [in § 1357] has been equated with the constitutional requirement of probable cause").

33. The regulations governing arrests similarly require that "an arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested has committed an offense against the United States or is an alien illegally in the United States," and "that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(i)-(ii); *see M-J-M-A- v. Hermosillo*, 822 F.Supp.3d 1147, 1158 (D. Or. 2026); *Chogllo Chaffa v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) (same); *Benipal v. Rokosky*, No. CV 26-01306 PHX RM (CDB), slip op. at 7 (D. Ariz. Apr. 24, 2026) (same). "Taken together, these standards mean that an immigration officer can know for certain that someone is present in violation of immigration laws, and still does not have authority to arrest them without a warrant or an individualized probable cause determination that the individual is 'likely to escape before a warrant can be obtained." *M-J-M-A*, 822. F.Supp.3d at 1172 (citing 8 C.F.R. § 287.8(c)(2)(ii)) (emphasis in original).

34. Consistent with the Fourth Amendment, a warrantless seizure "of a person must be supported by probable cause *particularized* with respect to *that person*." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) (emphasis added). In addition, probable cause must be established by "facts known to the arresting officer at the time of the arrest" and justification through facts learned after an arrest is impermissible. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citation omitted). Arrest for the mere purpose of investigating immigration status would also run afoul of the Constitution. *See, e.g., U.S. v. Ortiz-Hernandez*, 427 F.3d 567, 576 (9th Cir. 2005) (per curiam) (collection of evidence for

investigatory purposes after unlawful arrest violated Fourth Amendment); *Morales v. Chadbourne*, 996 F. Supp. 2d 19, 29 (D.R.I. 2014) (McConnell, J.), aff'd at 793 F.3d 208 (1st Cir. 2015) ("[T]he Fourth Amendment does not permit seizures for mere investigations").

#### i. Probable cause as to unlawful presence in the United States

35. Immigration officers need only reasonable suspicion to briefly stop an individual and question them about their immigration status, "but any further detention . . . must be based on . . . probable cause." *United States v. Brignoni-Ponce*, 422 U.S. 873, 882 (1975); *see also Vargas Ramirez v. United States*, 93 F.Supp.3d 1207, 1218-19 (W.D. Wash. 2015) ("if an agent detains a person for a brief, investigatory stop, the stop must be supported by reasonable suspicion that the person is unlawfully present in the United States, and if an agent arrests a person, the arrest must be supported by probable cause that the person is unlawfully present in the United States") (citing *Orhorhaghe v. I.N.S.*, 38 F.3d 488, 497 (9th Cir. 1994); *Tejeda-Mata*, 626 F.3d at 725; *Zepeda v. I.N.S.*, 753 F.2d 719, 725 (9th Cir. 1983)). Facts that may give rise to reasonable suspicion, without more, "fall short of establishing probable cause" where they "merely implicate[] generalizations that, if accepted, would cast suspicion on large segments of the law-abiding population." *Vargas Ramirez*, 93 F.Supp.3d at 1227 (quoting *United States v. Manzo-Jurado*, 457 F.3d 928, 935 (9th Cir. 2006).

36. Probable cause "to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe an offense has been or is being committed by the person being arrested." *Harper v. City of L.A.*, 533 F.3d 1010, 1022 (9th Cir. 2008) (citing *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964)). This information must be "based on facts particularized to that person and known

*prior to* the arrest" and requires "a probability or substantial chance" of the conduct in question. *M-J-M-A*, 822 F.Supp.3d at 1182 (emphasis in original) (internal citations and quotation marks omitted). When evaluating whether probable cause exists, courts should consider "the totality of circumstances." *Vargas Ramirez*, 93 F.Supp.3d at 1227.

**ii. Probable cause as to likelihood of escape**

37. To conduct a warrantless arrest, an immigration officer must also have reason to believe that an individual is "likely to escape before a warrant can be obtained for [their] arrest." 8 U.S.C. § 1357(a)(2). Further, the same temporal limits that apply to unlawful presence apply here – this determination "must be based on information known to the officer at the time of arrest and particular to the person arrested. An arrest cannot be justified after the fact." *M-J-M-A*, 822 F.Supp.3d at 1158.

38. Courts have defined what officers should consider when evaluating whether an individual is likely to escape, finding that the question "looks to 'the totality of the circumstances known to the officer before making the arrest,' including whether the officer can determine the individual's identity, previous escape attempts, and community ties such as a family, a home, or a job." *Id.* (citation omitted); *see e.g., United Farm Workers v. Noem*, 829 F.Supp.3d 801, 807 (E.D. Cal. 2026) (requiring "documentation for every warrantless stop or arrest" of a noncitizen, containing "particularized, narrative facts supporting the arresting Agent's conclusion that reasonable suspicion existed [to support] the detention and that probable cause existed to support the arrest); *Ramirez Ovando v. Noem*, 810 F.Supp.3d 1209, 1240 (D. Colo. 2025) (factors relevant to probable cause determination include "the officer's ability to determine the person's identity; attempted flight from the officer; knowledge of the person's prior escapes or evasions of immigration authorities or, on the other hand, prior court attendance or other compliance with authorities; ties to the community (including family circumstances, residence, or employment); and other *specific*

*circumstances* that weigh in favor of or against a reasonable belief that the person is likely to abscond") (emphasis added).

**V. Continued detention without a warrant violates Respondents' own regulations**

39. Respondents' regulations place additional requirements on designated officers following a warrantless arrest. Specifically, to keep someone detained after such an arrest, officers have "48 hours to conduct an initial custody determination and obtain a post-hoc warrant." *Fuentes-Gomez v. Casey*, No. 26-cv-3755-LL-MSB, 2026 WL 2211522, at *2 (S.D. Cal. Jul. 31, 2026) (citing 8 U.S.C. § 1357(a); 8 C.F.R. §§ 236.1(b)(1), 287.3(d)); *see also J.A.C.P. v. Wofford*, No. 1:25-CV-01354-KES-SKO (HC), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025) ("[i]ssuance of a warrant is a necessary condition to justify discretionary detention under [§] 1226(a)") (quoting *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025)).

40. In making such a custody determination, the officer must determine "whether the [noncitizen] will be continued in custody or released on bond or recognizance and whether a notice to appear and warrant of arrest . . . will be issued." 8 C.F.R. § 287.3(d). At such a custody determination, an officer may release a noncitizen not subject to enumerated exceptions, provided that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons," and that they are "likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8).

41. If the officer believes that the noncitizen should remain in custody, the officer must issue a warrant to keep them detained. 8 C.F.R. § 287.3(d).

42. Where such a determination is not made, or where a warrant is not timely issued after such a determination, courts have held a noncitizen's detention unlawful and ordered their immediate release. *E.g.*, *Valle v. Mullin*, No. 26-CV-3450-LL-GC, 2026 WL 2076024, at *2 (S.D. Cal. Jul. 17, 2026) (ordering petitioner's immediate release where

there was no evidence the government issued a warrant for arrest when she was detained); *Mayen v. Warden*, No. 1:26-cv-02354-DAD-AC, 2026 WL 1158217, at *2 (E.D. Cal. Apr. 29, 2026) (same); *Ahmed M. v. Bondi*, No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) (release is "an available and appropriate remedy for detention that lacks a lawful predicate"). Indeed, a "post-hoc warrant after [48] hours does not comply with 8 U.S.C. § 1226(a) and cannot support [a] Petitioner's detention." *Matute Garcia v. Larose*, No. 26-cv-4075-GPC (SBC), 2026 WL 2211804, at *2 (S.D. Cal. Jul. 31, 2026); *see also Ramirez Olvando v. Noem*, 810 F.Supp.3d 1209, 1226 (D. Colo. 2025) (post-hoc warrants "ha[ve] no legal effect" and cannot "fix[]" a warrantless arrest not supported by probable cause).

43. Further, a bond hearing before an immigration judge is contemplated by the regulations "[a]fter an initial custody determination by the district director," enabling an individual in immigration custody to obtain review of the mandatory 48-hour custody review determination. 8 C.F.R. § 236.1(d)(1). Because the initial custody determination is a "*pre-deprivation* opportunity" for an individual to demonstrate they are entitled to release, a post-deprivation hearing without any pre-deprivation facts to rely on would be an inadequate remedy. *Barrera v. Blanche*, No. 2:26-cv-02129, 2026 WL 2410454, at *5-6 (D. Nev. Aug. 18, 2026) ("ordering a bond hearing rather than Petitioner's immediate release would effectively bless Respondents' 'detain first, justify later' approach, which entirely disregards § 1226(a)'s regulatory framework") (citing *Sanchez Sandoval v. Blanche*, No. 2:26-cv-01387-RFB-NJK, 2026 WL 1803675, at *4 (D. Nev. June 23, 2026); *E.A.T.B. v. Wamsley*, 795 F.Supp.3d 1316, 1326 (W.D. Wash. 2025); *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025)).

44. Indeed, where Respondents "lack[] the lawful authority to detain a noncitizen in the first place . . . an order directing a bond hearing cannot adequately remedy the harm."

*Juan v. Larose,* No. 3:26-cv-3568-JES-AHG, 2026 WL 2411612, at *4 (S.D. Cal. Aug. 18, 2026); *see also Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) ("post-detention safeguards are definitionally inappropriate to address the harm" of a lack of pre-detention process, which "only [] pre-detention process can protect against").

## VI. The arrest and continued detention of noncitizens must comport with due process

45. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty" that the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. These protections apply to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent," and must be "adequate" enough to ensure that the government's asserted justification for physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id*. at 690, 693.

46. Procedural due process claims are evaluated under the well-established standard outlined in *Mathews v. Eldridge*, which directs district courts to consider and balance three factors: "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used and the probative value, if any, of additional or substitute procedural safeguards; and finally the government's interest." *Haygood v. Younger*, 769 F.2d 1350, 1357 (9th Cir. 1985) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

47. First, individuals who have resided in the United States for many years, even if they have never been in immigration proceedings, maintain a liberty interest in their freedom. *See Lobo-Portillo v. Johnson*, No. 5:26-cv-02105-SSS-AYP, 2026 WL 1365628, at *2 (C.D. Cal. May 8, 2026) (citing *Mendoza v. Noem*, 823 F. Supp. 3d 636, 650 (W.D.

Tex. 2026)) (explaining that Petitioner had a liberty interest in their freedom because they had established a life in the United States, even without prior detention and release).

48. Second, the risk of erroneous deprivation is high where Respondents failed to follow any of the required statutory or regulatory procedures governing warrantless arrest and detention. *See Gonzalez v. Santacruz*, 2026 WL 2675864, at *5 (C.D. Cal. Sept. 11, 2026) ("the risk of erroneous deprivation through the procedures used is significant here because there do not appear to have been any procedures used to determine whether there were grounds to detain Petitioner, at least prior to his [] detention"); *see also supra* sections I-III.

49. Third, the government's interest is low. Where the government deprives an individual of their liberty, it must have "a constitutionally adequate purpose for the confinement." *Jones v. United States*, 463 U.S. 354, 361 (1983) (internal quotation marks omitted). Where the government lacks both a "constitutionally adequate purpose" and lacked statutory authority to detain an individual in the first place, their detention violates procedural due process. In the civil immigration context, the only constitutionally adequate purposes of detention are to "effectuat[e] removal or protect[] against danger and flight risk." *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F.Supp.3d 1163, 1172 (W.D. Wash. 2023) (citing *Zadvydas*, 533 U.S. at 690-91). Without the requisite danger and flight risk determinations prior to a warrantless arrest, the government's interest in continued detention is low. *See, e.g., Elias v. Knight*, 817 F. Supp. 3d 986, 1001 (D. Idaho 2025) ("The government has identified no information establishing Petitioner poses a danger or flight risk. Its only apparent interest in detaining Petitioner—which imposes additional fiscal and administrative burdens—is to fulfill an arrest quota of 3,000 immigration arrests per day set by the current administration").

**CLAIMS FOR RELIEF**

**COUNT ONE**

**Violation of 8 U.S.C. § 1226(a)**

50. The allegations in the above paragraphs are realleged and incorporated herein.

51. The language of 8 U.S.C. § 1226(a) confirms that issuance of a warrant is a precondition to effecting an arrest under the statute.

52. Here, Respondents had no warrant when they unlawfully arrested Mr. Delgadillo on September 4, 2026. They did not know who Mr. Delgadillo was and were looking for someone else when they pulled over his vehicle. Officers did not show Mr. Delgadillo any warrant prior to forcing him out of his vehicle and arresting him.

53. Where Respondents did not even know who Mr. Delgadillo was when they arrested him, as he had never been in immigration proceedings before, they lacked statutory authority to arrest him, rendering his detention unlawful from its inception and requiring his immediate release.

**COUNT TWO**

**Violation of 8 U.S.C. § 1357 and Implementing Regulations**

54. The allegations in the above paragraphs are realleged and incorporated herein.

55. 8 U.S.C. § 1357 permits an immigration officer to conduct a warrantless arrest only if the officer has "reason to believe" that an individual is in the United States in violation of the immigration laws, and is likely to escape before an arrest warrant can be obtained. 8 U.S.C. § 1357(a)(2). A "reason to believe" is equivalent to "the constitutional requirement of probable cause." *Tejeda-Mata*, 626 F.2d at 725.

56. Here, immigration officers had no reason to believe Mr. Delgadillo was in the United States in violation of the immigration laws before stopping him on his way home from work, as he had no prior contact with immigration officials. The photograph of the

"criminal" the ICE agents claimed to be looking for when they stopped Mr. Delgadillo, showed a completely different individual that looked nothing like him, and arrested him after he indicated he was not the man in the photograph. The only similarities were that both men appeared Latino. The ICE officers did not have any proof that Mr. Delgadillo was in the United States unlawfully. Taking these facts together, it seems officers arrested Mr. Delgadillo because of his apparent race, a consideration "which merely implicates generalizations that, if accepted, would cast suspicion on large segments of the law-abiding population." *Vargas Ramirez*, 93 F.Supp.3d at 1227 (quoting *United States v. Manzo-Jurado*, 457 F.3d 928, 935 (9th Cir. 2006)). Accordingly, Mr. Delgadillo's warrantless arrest was unlawful on this basis alone.

57. In addition, officers had no reason to believe that Mr. Delgadillo was likely to escape before a warrant could be obtained because he did not resist arrest, he has a long-term partner and children in the United States, has no criminal history anywhere in the world, and this was his first encounter with immigration. In any event, officers did not ask Mr. Delgadillo any questions bearing on risk of flight prior to arresting him, as is required under the statute as well as the district-wide injunction in *Vasquez Perdomo*, which took effect on September 2, 2026. *See* 2026 WL 2751388 at *31 ("Defendants are enjoined from enforcing their policy and practice of making warrantless civil immigration arrests in this District without a prearrest individualized determination by the arresting agent or officer of probable cause that the person being arrested is likely to escape before a warrant can be obtained, as required by 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)").

58. Where officers could not have considered any of Mr. Delgadillo's particular circumstances before arresting him, his warrantless arrest was unlawful on that basis alone.

59. In addition, officers failed to conduct the necessary custody determination for Mr. Delgadillo within 48 hours of his arrest. 8 C.F.R. § 287.3. He was therefore denied

any pre-deprivation opportunity to contest his detention, including through seeking review of her initial custody determination before an immigration judge. 8 C.F.R. § 236.1(d)(1). In these circumstances, a post-hoc bond hearing cannot be an adequate remedy. *See Sun*, 2025 WL 2730235 at *6 ("post-detention safeguards are definitionally inappropriate to address the harm" of a lack of pre-detention process). To this day, he has never been shown a warrant and received no hearing with a judge about his custody status.

60. Accordingly, Petitioner's warrantless arrest and continued detention are unlawful under the INA and implementing regulations, warranting Petitioner's immediate release.

**COUNT THREE**

**Violation of the Due Process Clause of the Fifth Amendment:**

**Procedural Due Process**

61. The allegations in the above paragraphs are realleged and incorporated herein.

62. The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. Amend. V. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that the Clause protects." *Zadvydas*, 533 U.S. at 690.

63. Procedural due process claims are evaluated under the well-established balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

64. First, Mr. Delgadillo's private interest is strong, by virtue of the fact that he has lived and worked in the United States for twenty years and built a significant life here. He has three U.S. citizen children who grew up in the United States and attend school in the San Bernardino area. *E.g., Cruz v Lyons*, No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *3 (C.D. Cal. Nov. 5, 2025). He is the sole financial provider for his family

and caretaker for his type 1 diabetic partner, who also urgently requires surgery to remove an ovarian cyst.

65. Second, the risk of erroneous deprivation of Mr. Delgadillo's liberty is particularly high where officers had no reasonable suspicion of unlawful activity prior to stopping him, failed to obtain a warrant for his arrest prior to arresting him, and failed to make the necessary probable cause determinations as to his unlawful presence in the United States and likelihood of flight, which are necessary prerequisites to a warrantless immigration arrest. In addition, Respondents failed to conduct the required custody determination within 48 hours of his arrest or provide Mr. Delgadillo with a bond hearing before an immigration judge after his arrest.

66. Third, the government's interest in detaining Mr. Delgadillo without any pre-deprivation process here is low. Where the government deprives an individual of their liberty, it must have "a constitutionally adequate purpose for the confinement." *Jones*, 463 U.S. at 361 (internal quotation marks omitted). In the civil immigration context, the only constitutionally recognized purposes of detention are to "effectuat[e] removal or protect[] against danger and flight risk." *Padilla*, 704 F.Supp.3d at 1172 (citing *Zadvydas*, 533 U.S. at 690-91).

67. Here, Respondents not only lacked a constitutionally adequate purpose to arrest and detain Mr. Delgadillo, who was unknown to them prior to his warrantless arrest, but they also would have been unaware of any theoretical risk of danger or flight warranting continued detention without conducting the necessary 48-hour custody review. *See* 8 C.F.R. § 287.3. Accordingly, Mr. Delgadillo's arrest and continued detention violate his procedural due process rights, warranting his release from custody. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The typical remedy for [unlawful] detention is, of course, release").

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

(3) Declare that Petitioner's warrantless arrest and continued detention violates the Due Process Clause of the Fifth Amendment, 8 U.S.C. §§ 1226(a), 1357, and/or 8 C.F.R. § 287.3;

(4) Issue a Writ of Habeas Corpus ordering Respondents to immediately release Petitioner without additional conditions, and return all documents and personal property confiscated from him at the time of his arrest;

(5) Enjoin Respondents from re-detaining Petitioner without constitutionally adequate notice and an opportunity to respond prior to said re-detention; and

(6) Grant any further relief this Court deems just and proper.

Dated: November 4, 2026

Respectfully Submitted,
*/s/ Alexa Askari*
ALEXA ASKARI

*Pro Bono Attorney for Petitioner*

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, Mario Alberto Delgadillo, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 4th day of November, 2026.

Respectfully Submitted,

*/s/ Alexa Askari*
ALEXA ASKARI

*Pro Bono Attorney for Petitioner*